IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-01468-PAB-STV

WOODWARD, INC., a Delaware corporation,

    Plaintiff,

v.

ZHRO SOLUTIONS, LLC, a Nevada limited liability company,
ADVANCED GREEN INNOVATIONS, LLC, a Nevada limited liability company, and
KENNETH LOSCH,

    Defendants.

---

# ORDER

---

This matter is before the Court on Plaintiff Woodward, Inc.'s Motion to Strike Defendants ZHRO Solutions, LLC and Advanced Green Innovations, LLC's Jury Demand [Docket No. 30].[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

**I. BACKGROUND**

This is a breach of contract action based on a Joint Development Agreement ("JDA") entered into by plaintiff Woodward, Inc. ("plaintiff") and defendant ZHRO

---

[1] Plaintiff brings its motion under Fed. R. Civ. P. 12(f), which allows a court, on motion or on its own, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see also* Docket No. 30 at 4. However, motions to strike jury demands are properly brought under Fed. R. Civ. P. 39(a)(2), not Rule 12(f). *See Ackner v. PNC Bank, Nat'l Ass'n*, 2017 WL 7355329, at *2 (S.D. Fla. Dec. 22, 2017); *In re Harpole Constr., Inc.*, 565 B.R. 193, 202 (Bankr. D.N.M. 2017). The Court will therefore construe plaintiff's motion as being brought under Rule 39(a)(2).

Solutions, LLC ("ZHRO") in December 2015. See Docket No. 60 at 7-8, 14-15, ¶¶ 33, 73-78; Docket No. 67 at 4, ¶ 33; Docket No. 30-1 (JDA).[2] The operative complaint asserts claims for breach of contract and declaratory relief against ZHRO, AGI, and Kenneth Losch. Docket No. 60 at 14-16.[3]

On August 3, 2018, ZHRO and AGI (hereinafter "defendants") filed their answer to plaintiff's second amended complaint, along with counterclaims for breach of contract, breach of the duty of good faith and fair dealing, and declaratory judgment. Docket No. 28 at 8-10, ¶¶ 14-32. ZHRO and AGI requested "that all issues triable to a jury be so tried." Id. at 10. On August 24, 2018, plaintiff moved to strike defendants' jury demand. Docket No. 30.[4]

## II. ANALYSIS

The Seventh Amendment to the U.S. Constitution guarantees the right to a trial by jury. U.S. Const. amend. VII. In cases litigated in federal courts, both the right to a jury trial and the question of whether a party has waived that right are governed by federal law. See Telum, Inc. v. E.F. Hutton Credit Corp., 859 F.2d 835, 837 (10th Cir.

---

[2] As discussed in more detail below, the parties dispute whether Advanced Green Innovations, LLC ("AGI") was also a party to the agreement. See Docket No. 60 at 8, 9, ¶¶ 34-35, 43; Docket No. 67 at 4, ¶¶ 33-34.

[3] Plaintiff alleges that Mr. Losch "has been the sole manager of [ZHRO and AGI], either directly or indirectly, since their inception in 2009." Docket No. 60 at 11, ¶ 54.

[4] Plaintiff's motion to strike is not affected by the parties' filing of amended pleadings. See Docket No. 60 (third amended complaint); Docket No. 67 (first amended answer to third amended complaint and counterclaims). In their amended answer and counterclaims, defendants reiterate their request for a jury trial. See Docket No. 67 at 11. However, plaintiff's motion to strike does not apply to Mr. Losch, who was added to the lawsuit with the filing of the third amended complaint, see Docket No. 60, and has not yet requested a jury trial.

1988); *Merrill v. Pathway Leasing LLC*, No. 16-cv-02242-KLM, 2018 WL 2183985, at *1 (D. Colo. May 10, 2018) (citing *Tracinda Corp. v. Daimler Chrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007)). Federal Rule of Civil Procedure 39(a) provides:

> When a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action. The trial on all issues so demanded must be by jury unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial.

Fed. R. Civ. P. 39(a). "Agreements waiving the right to trial by jury are neither illegal nor contrary to public policy." *Telum, Inc.*, 859 F.2d at 837. However, a jury trial waiver is valid only if it is knowing and intentional. *See Merrill*, 2018 WL 2183985, at *1; *see also Bevill Co., Inc. v. Sprint/United Mgmt. Co.*, 304 F. App'x 674, 682 (10th Cir. 2008) (unpublished).

Plaintiff argues that defendants waived their right to a jury trial by entering into the JDA. Docket No. 30 at 1-3. Section 15.7 of the JDA, entitled "**Governing Law and Forum; Waiver of Jury**," provides that "[e]ach Party irrevocably waives, to the fullest extent allowed by applicable law, the defense of an inconvenient forum in any such action or proceeding and any right it may have to a trial by jury." Docket No. 30-1 at 22. In support of their jury demand, defendants argue that (1) they did not knowingly and voluntarily waive their right to a jury trial; (2) the jury waiver cannot be enforced against AGI, a non-signatory to the JDA; and (3) plaintiff's alter ego claim is triable to a jury. Docket No. 45.

### A. Whether the Jury Waiver Was Knowing and Voluntary

In determining whether a jury trial waiver was knowing and voluntary, courts

consider several factors, including:

> (1) the conspicuousness of the provision in the contract; (2) the level of sophistication and experience of the parties entering into the contract; (3) the opportunity to negotiate terms of the contract; (4) the relative bargaining power of each party; and (5) whether the waiving party was represented by counsel.

*PostNet Int'l Franchise Corp. v. Amercis Int'l, Inc.*, No. 06-cv-00125-PSF-BNB, 2006 WL 1775599, at *1 (D. Colo. June 26, 2006) (quoting *Allyn v. W. United Assurance Co.*, 347 F. Supp. 2d 1246, 1252 (M.D. Fla. 2004)). The ultimate question is "not whether any particular number of factors have been satisfied, but whether, in light of all the circumstances, the Court finds the waiver to be unconscionable, contrary to public policy, or simply unfair." *Allyn*, 347 F. Supp. 2d at 1252. The burden is on the party seeking to enforce the waiver to show that it was knowing and voluntary. *Merrill*, 2018 WL 2183985, at *1.

### 1. *Conspicuousness of the Jury Waiver*

The Court finds that the first *PostNet* factor, conspicuousness, supports a finding that the waiver was knowing and voluntary. Although the jury waiver provision is located on page 21 of the 37-page JDA, Mr. Losch initialed that page, the jury waiver provision is written in the same typeface as the rest of the agreement, and the provision is offset by the bolded heading "Governing Law and Forum; Waiver of Jury." *See* Docket No. 30-1 at 22. Additionally, a nearly identical jury waiver provision was included in the parties' Collaboration Agreement, which was executed more than a year before the JDA. Docket No. 30-3 at 20, 22.[5] Courts have found jury waiver provisions

---

[5]Plaintiff also asserts in its reply that "AGI's draft of the [JDA] included the [jury waiver] provision." Docket No. 48. However, the Court will not consider arguments and

to be enforceable based on similar facts. *See, e.g.*, *Hines v. 1025 Fifth Ave., Inc.*, 2015 WL 765943, at *3 (S.D.N.Y. Feb. 23, 2015) (finding jury waiver enforceable where it "was printed in the same font and typeface as every other provision in the Lease, and included the boldface heading 'Waiver by Trial of Jury'"); *Moreno v. Qwest Corp.*, No. 13-cv-00103-RM-MEH, 2013 WL 2444720, at *3 (D. Colo. June 5, 2013) (holding that a jury waiver located four paragraphs above the signature line with a heading set forth in bold, capital letters was "sufficiently conspicuous"); *Lehman Bros. Holdings Inc. v. Bethany Holdings Grp., LLC*, 801 F. Supp. 2d 224, 232 (S.D.N.Y. 2011) (finding jury waivers "sufficiently conspicuous" where they appeared "in the same font and size as all the other provisions in the contract" and the parties had used identical jury waiver provisions in previous business dealings); *Too Tall Inc. v. Sara Lee Bakery Grp., Inc.*, 2009 WL 10665806, at *2-3 (D.N.M. Sept. 9, 2009) (finding that jury waiver located on the twenty-second page of a twenty-six-page agreement in capital letters "easily satisf[ied] the conspicuousness requirement"); *PostNet*, 2006 WL 1775599, at *2 (holding that jury waiver clause contained on the next to last page of a 34-page franchise agreement and in the same typeface as the rest of the agreement was enforceable); *cf. Tara Woods Ltd. P'ship v. Fannie* Mae, No. 09-cv-00832-MSK-MEH, 2010 WL 1529459, at *2 (D. Colo. Apr. 1, 2010) (noting that placement of jury waiver provision on the pages immediately preceding the signature page "demonstrat[ed] that

---

evidence presented for the first time in plaintiff's reply brief. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) (explaining that court "does not ordinarily review issues raised for the first time in a reply brief" because it "robs the [other side] of the opportunity to demonstrate that the record does not support [the party's] factual assertions and to present an analysis of the pertinent legal precedent that may compel a contrary result").

[the plaintiff] likely saw and read the provision before [signing] the documents").

### 2. Sophistication of the Parties

The second *PostNet* factor, the sophistication of the parties, also supports enforcement of the jury waiver. Plaintiff asserts that defendants are "sophisticated business entities" involved in the development of "fuel injection systems for the conversion of diesel engines to compressed natural gas." Docket No. 30 at 7; *see also* Docket No. 45 at 3 (arguing only that plaintiff "is a much larger and more sophisticated company than" ZHRO). Plaintiff further argues that defendants have "extensive experience with the corporate form, corporate documents, and contracts generally" by virtue of their existence as "part of a larger, inter-related corporate family." Docket No. 30 at 7. Defendants do not dispute these assertions. *See* Docket No. 45 at 3 (stating only that "Woodward is a much larger and more sophisticated company than" ZHRO).

### 3. Opportunity to Negotiate

Defendants admit that "there were some negotiations" over the drafting of the JDA. Docket No. 45 at 3. This is supported by AGI's circulation of a draft agreement. *See* Docket No. 48-1; *see also* Docket No. 48-2 (email exchange between representatives of Woodward and AGI regarding revisions to the JDA). The JDA also provides that "[t]he Parties . . . participated jointly in the negotiation and drafting of the th[e] Agreement" and that, in the event "an ambiguity or question of intent or interpretation arises, th[e] Agreement will be construed as if drafted jointly by the Parties." Docket No. 30-1 at 23. Given these facts, the Court finds that the third *PostNet* factor weighs in favor of enforcement.

### 4. Relative Bargaining Power of the Parties

Plaintiff argues that ZHRO and AGI had equal bargaining power because they "are sophisticated business entities, represented by a sophisticated CEO and manager, Kenneth Losch, that jointly negotiated and drafted the JDA." Docket No. 30 at 8. In response, plaintiff states that "Woodward is a much larger and more sophisticated company" and "the lead drafter of the JDA." Docket No. 45 at 3. Plaintiff's argument is unavailing. First, the JDA specifically disclaims that one party was a "lead drafter." *See* Docket No. 30-1 at 23 (stating that the parties "have participated jointly in the negotiation and drafting of this Agreement" and that, "[i]f any ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the Parties"). Second, plaintiff's statement does not suggest the type of "gross disparity" in bargaining power that would counsel against enforcement of the waiver provision. *Tellum*, 859 F.2d at 837. Accordingly, this factor supports a finding of waiver. *See Moreno*, 2013 WL 2444720, at *5; *see also Bevill Co.*, 304 F. App'x at 682 (affirming district court's finding that there was no "gross disparity" in bargaining power because the plaintiff had done post-graduate-level work, had gained business experience as an independent contractor, and had negotiated language in the parties' contract).

### 5. Representation by Counsel

There is nothing in the record indicating whether ZHRO was represented by counsel during the drafting of the JDA; however, there is also no indication that

defendants could not have retained counsel to advise them.⁶  This factor is thus neutral. *Moreno*, 2013 WL 2444720, at *4 (finding representation factor neutral where plaintiff was not represented by counsel but "there [was] nothing in the record indicating that Plaintiff was prohibited from seeking the advice of counsel concerning the agreement and/or that she did seek the advice of counsel").

Based on the foregoing analysis of the *PostNet* factors, the Court finds that defendants' execution of the jury trial waiver was knowing and voluntary.  Plaintiff's motion to strike defendant's jury demand will therefore be granted as to ZHRO.⁷

### B. Whether AGI Is Bound By the Jury Waiver

Defendants argue that, even if the jury waiver is enforceable against ZHRO, it is not enforceable against AGI because AGI was not a party to the JDA.  Docket No. 45 at 3-4.  Plaintiff responds that, "under the express terms of the JDA, AGI is an 'affiliate' of ZHRO's and therefore, a party to the JDA."  Docket No. 30 at 9.  Alternatively, plaintiff contends that the jury waiver is enforceable against AGI as a third-party beneficiary of the JDA.  *Id.*⁸

---

⁶Plaintiff has presented evidence showing that AGI's Associate General Counsel helped to negotiate the terms of the agreement.  *See* Docket No. 48-2.  Because this evidence was submitted for the first time with plaintiff's reply brief, the Court will not consider it for purposes of resolving the instant motion.  *See Stump*, 211 F.3d at 533.

⁷Aside from the issue of whether ZHRO knowingly and voluntarily waived its right to a jury trial, the parties do not dispute that ZHRO is bound by the JDA.  *See* Docket No. 67 at 4, ¶ 33 (admitting that ZHRO entered into the JDA with Woodward); *see also* Docket No. 45.

⁸Plaintiff also suggests that AGI was a party to the JDA because Mr. Losch, AGI's manager, signed the agreement.  Docket No. 30 at 9 (noting that Mr. Losch "is the manager of both companies and signed the JDA").  However, plaintiff does not argue that Mr. Losch signed the JDA in his capacity as AGI's agent.  *See Trina Solar*

8

The Court finds plaintiff's first argument unpersuasive. The JDA provides in relevant part:

> This **JOINT DEVELOPMENT AGREEMENT** (this "Agreement") is entered into and is effective as of December 14, **2015** (the "Effective Date"), by and between ZHRO Solutions, LLC . . . (collectively with its subsidiaries and Affiliates, "ZHRO") . . . and Woodward, Inc. . . . (collectively with its subsidiaries and Affiliates, "Woodward") . . . .

Docket No. 30-1 at 2. The term "affiliates" is further defined as "any entity that controls, is controlled by, or is under common control with either Party (as defined below)." *Id.* The terms "control," "controlled by," and "under common control with" mean:

> (a) an ownership interest, directly or indirectly, of more than fifty percent (50%) in such entity or Party, or the maximum percentage permitted under local laws or regulations; or (a) [sic] the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of whether through the ownership of voting securities, by contract, or otherwise.

*Id.* Plaintiff contends that AGI is an "affiliate" of ZHRO, and thus bound by the JDA, because it is "ZHRO's sole member and . . . by definition owns 100% of ZHRO." Docket No. 30 at 4. This argument erroneously presumes that the JDA, and the definitions contained therein, are enforceable against AGI. Under both New York and

---

*US, Inc. v. JRC-Services LLC*, 229 F. Supp. 3d 176, 185 (S.D.N.Y. 2017) ("It is black letter law that an agent binds his principal when he enters into a contract within the scope of his authority." (internal quotation marks omitted) (relying on federal cases applying New York law)). Nor does plaintiff seek to enforce the jury waiver against AGI under an alter ego theory. *See Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 133 (2d Cir. 1997) (recognizing that "piercing the corporate veil between a signatory and nonsignatory party may bind the nonsignatory party to an arbitration agreement of its alter ego"). To the extent plaintiff's reference to AGI's remission and collection of payments, Docket No. 30 at 9, is an attempt to assert an alter ego theory, plaintiff relies solely on disputed allegations, *see* Docket No. 67 at 5, ¶ 44 (denying allegation that AGI made payments on ZHRO's behalf), and does not provide any evidence in support of an alter ego claim.

federal common law, it is well established that a party generally cannot be bound by a contract it did not sign. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."); *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 390 (S.D.N.Y. 2019) (internal quotation marks and bracket omitted) (stating that, under New York contract law, "it is axiomatic that a contract cannot bind a non-party unless the contract was signed by the party's agent, the contract was assigned to the party, or the signatory is in fact the alter ego of the party").[9] This rule applies even when the non-signatory is a parent or other corporate affiliate of a contracting party, *see Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226, 1235 (D. Colo. Mar. 29, 2011) (holding that, because a parent company "has a separate corporate existence" from its subsidiary, there was "no basis to conclude that [the defendant] should be held liable for the contracts entered into by its subsidiaries"); *Sheridan Broad. Corp. v. Small*, 19 A.D.3d 331, 332 (N.Y. App. Div. 2005) ("Parent and subsidiary or affiliated corporations are, as a rule, treated separately and independently so that one will not be held liable for the contractual obligations of the other absent a demonstration that there was an exercise of complete dominion and control . . . ."), and the contract purports to bind affiliated third-party entities. *See, e.g.*,

---

[9]Apparently relying on the choice of law provision in the JDA, *see* Docket No. 30-1 at 22, plaintiff applies New York law to the issue of whether AGI may be bound by the JDA as a non-signatory. Docket No. 30 at 9. Some cases, however, suggest that federal law should govern the question when it arises in relation to the enforceability of a jury waiver clause. *See, e.g.*, *Tracinda Corp.*, 502 F.3d 212, 222 (3d Cir. 2007) (explaining that "[us]ing federal law to determine the jury trial right assures the uniformity in its exercise which is demanded by the Seventh Amendment"). Rather than resolve this choice of law issue without the benefit of further briefing by the parties, the Court will assess the enforceability of the jury waiver provision under both New York and federal law.

*DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 319 (5th Cir. 2011) (relying on federal case law to hold that contract language purporting to bind "affiliates" was not a sufficient basis on which to enforce arbitration agreement against non-signatories, absent evidence that the contracting parties "had any type of authority to bind" the non-signatories to the agreement); *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 775-80 (2d Cir. 1995) (declining to enforce arbitration agreement against non-signatory parent corporation notwithstanding language in contract that purported to bind "affiliates" of contracting party); *Arcadia Biosciences, Inc.*, 356 F. Supp. 3d at 389-91 (applying New York law to hold that forum selection clause in nondisclosure agreement was not binding on affiliate of contracting party, despite language in agreement purporting to bind current and future affiliates).

Nevertheless, state and federal courts have recognized six theories, arising out of traditional principles of contract and agency law, for binding a non-signatory to a contract: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; (5) estoppel; and (6) third-party beneficiary. *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 357 (5th Cir. 2003); *Thomson-CSF, S.A.*, 64 F.3d at 776-77; *Hines*, 2015 WL 765943, at *2 (applying New York law to hold that jury waiver was enforceable against third-party beneficiaries of lease agreement); *Arcadia*, 356 F. Supp. 3d at 390 (stating that, under New York contract law, a contract cannot bind a non-party unless "the contract was signed by the party's agent, the contract was assigned to the party, . . . , the signatory is in fact the alter ego of the party," or the party affirmatively assumed duties under the contract (internal quotation marks omitted)). In

11

arguing that AGI is bound by the jury waiver, plaintiff clearly invokes only the third-party beneficiary theory. Under that theory, a court looks to "the intentions of the parties at the time the contract was executed." *Bridas*, 345 F.3d at 362 (internal quotation marks omitted). "The fact that a [non-signatory] is directly affected by the parties' conduct, or that [it] may have a substantial interest in a contract's enforcement, does not make [it] a third-party beneficiary." *Id.* (internal quotation marks and bracket omitted); *see also Hines*, 2015 WL 765943, at *2 (stating that the benefit to the third party must be "sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [the third party] if the benefit is lost"). Rather, "a party must establish that no one other than the third party can recover if the promisor breaches the contract or that the language of the contract otherwise evidences an intent to permit enforcement by the third party." *Id.*; *Bridas*, 345 F.3d at 362 (stating that presumption that parties are contracting only for themselves can be "overcome only if the intent to make someone a third-party beneficiary is clearly written or evidenced in the contract" (internal quotation marks omitted). Here, plaintiff contends that AGI was an intended third party beneficiary of the JDA because it was "in control of payment, collections, project development, and plan approval under the JDA." Docket No. 30 at 10. However, such conclusory assertions, unsupported by reference to specific terms of the JDA or any other competent evidence, do not satisfy plaintiff's burden of showing that AGI knowingly and voluntarily waived its right to a jury trial as a third-party beneficiary of the JDA. *See Merrill*, 2018 WL 2183985, at *1 (placing burden of proving that jury waiver was knowing and voluntary on the party seeking to

12

enforce the waiver); *Walker v. SC Realty Servs., Inc.*, 2016 WL 4245487, at *2 (D. Kan. Aug. 11, 2016) (noting that "the right of jury trial is fundamental" and thus "courts indulge every reasonable presumption against waiver"); *cf. Thomson-CSF, S.A.*, 64 F.3d at 780 (rejecting district court's hybrid approach to enforcing arbitration agreement against a non-signatory parent corporation on the ground that "[a]nything short of requiring a *full* showing of some accepted theory under agency or contract law [would imperil] a vast number of parent corporations").[10]

Even assuming the express language of the JDA supports a finding that AGI was a third-party beneficiary of the JDA, plaintiff has not cited any cases holding that a jury waiver may be enforced against a third-party beneficiary who has not sought to benefit from its terms. *See Colonial Bancgroup Inc. v. PriceWaterhouseCoopers LLP*, 2017 WL 4175027, at *3 (M.D. Ala. Feb. 7, 2017) (noting that "courts are reticent to enforce a jury waiver against a non-signatory who is not claiming to be a third-party beneficiary of the contract"); *Bridas*, 345 F.3d at 363 ("[W]e are again reluctant to bind the Government to the terms of the JVA on a third-party beneficiary theory because the

---

[10]Plaintiff relies on allegations in the second amended complaint and slides from an "Exemplar Project Presentation" to show that AGI "remitted and collected payments" and was "involved in project development and plan approval under the JDA." Docket No. 30 at 9. However, the cited allegations are disputed, *see* Docket No. 28 at 5, ¶¶ 40-42; Docket No. 67 at 5, ¶ 44 (denying similar allegation in third amended complaint), and the Exemplar Project Presentation slides do not unambiguously establish that AGI was engaging in project development under the JDA. *See* Docket No. 30-4 at 2-3 (referring only to "joint development" between Woodward and AGI and stating that presentation document was "subject to and governed by the terms and conditions expressly set forth in the Mutual Nondisclosure Agreement(s) between by ZHRO Solutions, LLC and Woodward, Inc. executed on or about April 18, 2011 and February 11, 2014"). Accordingly, plaintiff has not submitted sufficient evidence to support a finding that AGI was a third-party beneficiary of the JDA.

Government has never filed a claim against Bridas premised upon the agreement, or otherwise sought to enforce its terms."); *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 200 (S.D. Tex. 2008) (fact that non-signatory to agreement had not sued parties seeking to compel arbitration "bolster[ed] the conclusion that [the non-signatory could not] be bound to arbitrate on a third-party beneficiary theory"); *see also Belzberg v. Verus Inv. Holdings Inc.*, 999 N.E.2d 1130, 1134 (N.Y. 2013) (noting that, under the direct benefits theory of estoppel, a nonsignatory cannot be compelled to arbitrate a claim where the benefits flowing from the contract are merely indirect – i.e., "where the nonsignatory exploits the contractual relation of the parties, but not the agreement itself").[11] Here, AGI has not asserted any counterclaims against plaintiff predicated on the JDA. *See* Docket No. 67 at 9 (asserting counterclaims on behalf of ZHRO). Accordingly, plaintiff has failed to show that the jury waiver is enforceable against AGI under a third-party beneficiary theory.[12]

Plaintiff also appears to invoke the agency and assumption theories as grounds for enforcing the jury waiver provision. For example, plaintiff contends that AGI was a signatory to the agreement because Mr. Losch, who signed the JDA, is the manager of both AGI and ZHRO. Docket No. 30 at 9. However, the signature page of the JDA

---

[11]In *Hines*, the court concluded that jury waiver was enforceable against non-signatories to a lease agreement under a third-party beneficiary theory where the non-signatories' right to reside in the apartment was a direct benefit conferred by the agreement and the non-signatories had filed suit against the owner of the apartment building for disability discrimination and failure to provide equal housing opportunities. 2015 WL 765943, at *1-2, 4. *Hines* is therefore inapposite.

[12]The Court does not hold that plaintiff may never prevail on a third-party beneficiary theory, only that the evidence presently before the Court is insufficient to show that the jury waiver is enforceable against AGI.

14

indicates that Mr. Losch signed the agreement as manager/CEO of ZHRO, *see* Docket No. 30-1 at 24, and plaintiff has not presented any evidence or argument that Mr. Losch was acting with the express, implied, or apparent authority to contract on AGI's behalf. *See Ayco Co., L.P. v. Becker*, 2011 WL 3651027, at *7-8 (N.D.N.Y. Aug. 18, 2011) (stating that an affiliate relationship alone is insufficient to demonstrate an agency relationship between parties and that, to establish an agency relationship under New York law, a party must show that the agent had express, implied or apparent authority to act on principal's behalf).  As to the assumption theory, while plaintiff's evidence that AGI helped to negotiate the JDA, *see* Docket No. 48-2, may ultimately support a finding that AGI assumed the obligations of the agreement, *see Roldan v. Second Development Servs., Inc.*, 2018 WL 1701938, at *8 (E.D.N.Y. Mar. 30, 2018) (noting that "courts have found that a non-signatory assumed the obligations of an agreement where the non-signatory: (1) participated in the negotiation of the contract; (2) micromanaged performance under the contract; (3) acknowledged it was the real party in interest; and (4) made payments on behalf of the signatory"), plaintiff introduced this evidence for the first time in its reply brief and without providing any context for the email exchange.  Given that defendants have not had an opportunity to respond, the Court is unable to conclude that AGI assumed the obligations of the JDA based solely on AGI's apparent involvement in the negotiation process.  *See Stump*, 211 F.3d at 533.

      For the foregoing reasons, the Court will deny without prejudice plaintiff's motion to strike as to AGI.

### C. Whether Plaintiff's Alter Ego Claims are Triable to a Jury

Plaintiff also requests that the Court strike defendants' jury demand because plaintiff's alter ego liability claim is not triable to a jury under Nevada law. Docket No. 30 at 10-11. As an initial matter, Woodward is suing AGI for breach of contract both as a direct party to the JDA and under an alter ego theory. *See* Docket No. 60 at 14-15, ¶¶ 73-77. Thus, even if the Court were to agree that the alter ego claim is a pure question of law, plaintiff's direct claim against AGI for breach of contract would still be triable to a jury assuming AGI has not otherwise waived its right to a jury trial.

Considering only the alter ego claim, the Court is not persuaded that Nev. Rev. Stat. § 78.747(3) forecloses AGI's entitlement to a jury trial. Although it appears that Nevada law would govern the issue of whether to pierce the corporate veil between ZHRO and AGI, *see* Docket No. 60 at 3-4, ¶¶ 10-11 (alleging that ZHRO and AGI are Nevada limited liability companies); *Jones v. Marquis Prop., LLC*, 212 F. Supp. 3d 1010, 1020-21 (D. Colo. 2016) (holding that, under Colorado's choice of law rules, Utah law governed veil-piercing of Utah LLC); *Echostar Satellite Corp. v. Ultraview Satellite, Inc.*, No. 01-cv-00739-JLK, 2009 WL 1011204, at *7 (D. Colo. Apr. 15, 2009) (applying Colorado's choice of law rules and finding that Texas law governed veil-piercing as to Texas entities), AGI's right to a jury trial on the alter ego claim is a matter of federal law. *See Elm Ridge Exploration Co., LLC v. Engle*, 721 F.3d 1199, 1221-22 (10th Cir. 2013) (explaining that the "right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions" and that "the characterization of [a] state-created claim as legal or equitable for purposes of whether a right to jury

16

trial is indicated must be made by recourse to federal law" (quoting *Simler v. Conner*, 372 U.S. 221 (1963)).

Here, plaintiff seeks damages from AGI for defendants' alleged breach of the JDA.  *See* Docket No. 60 at 16.  Multiple federal courts applying the two-part framework from *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), have held that alter ego claims seeking a money judgment are legal in nature and therefore triable to a jury.  *See, e.g.*, *Robinson Mechanical Contractors, Inc. v. PTC Grp. Holdings Corp.*, 2017 WL 4150858, at *1-3 (E.D. Mo. Sept. 19, 2017) (holding that, because plaintiff was seeking to pierce the corporate veil to obtain a money judgment, plaintiff was entitled to a jury trial on its alter ego claim under the Seventh Amendment); *In re: FKF 3, LLC*, 2016 WL 4540842, at *17 (S.D.N.Y. Aug. 30, 2016) (noting that "the weight of authority appears to recognize a right to jury trial with respect to claims seeking to pierce the corporate veil, because where such claims seek to impose liability upon the defendant for the debts or obligations of another, courts have concluded the remedy sought is monetary damages and, hence, is legal in nature" (internal quotation marks and brackets omitted)); *cf. Elm Ridge Exploration Co.*, 721 F.3d at 1222 (holding that defendant was entitled to a jury trial on his breach of contract counterclaims even though they were joined to action that was equitable in nature).  Nonetheless, because neither party has addressed whether alter ego claims are legal or equitable in nature under federal law, the Court declines to resolve the issue without the benefit of further briefing.  Plaintiff's motion to strike will therefore be denied without prejudice as to the alter ego claims against AGI.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff Woodward, Inc.'s Motion to Strike Defendants ZHRO Solutions, LLC and Advanced Green Innovations, LLC's Jury Demand [Docket No. 30] is **GRANTED** in part and **DENIED** in part without prejudice, as stated in this order.

DATED March 31, 2019.

                                        BY THE COURT:

                                        s/Philip A. Brimmer
                                        PHILIP A. BRIMMER
                                        Chief United States District Judge